IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| DEMOCRATIC PARTY OF HAWAI`I, | ) | CIVIL NO. _____ |
| | ) | |
| | ) | MEMORANDUM OF LAW |
| Plaintiff, | ) | IN SUPPORT OF PLAINTIFF'S |
| | ) | MOTION FOR PARTIAL |
| | ) | SUMMARY JUDGMENT AND |
| vs. | ) | PRELIMINARY INJUNCTION |
| | ) | |
| SCOTT T. NAGO, in his official | ) | |
| capacity as Chief Election | ) | |
| Officer of the State of Hawai`i, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

-Page-

I. Introduction ........................................................................... 1

II. Legal Standards ................................................................... 3
    A.  Standard for Summary Judgment .................................... 3
    B.  Standard for Preliminary Injunction ............................... 4
    C.  Standard for Challenges to Election Laws ....................... 5
    D.  Standard for Facial Unconstitutionality in an
        Elections Law Context ..................................................... 9

III. Germane Facts .................................................................. 11

IV. Analysis of Hawai`i Primary Election Law ......................... 12
    A. Hawai`i's Primary Election Law, Applicable to All Offices
        Other Than U.S. President, Is Both Mandatory and Exclusive ........ 12
    B. Hawai`i's Primary Election Law Makes It Illegal for DPH
        to Exercise Its Preference of Nomination Electorate ......................... 14

V. Analysis of Associational Rights Under the U.S. Constitution,
    and Ostensible Justifications for Infringement Thereof .................... 17
    A. Analysis of First Amendment Associational Rights ........................ 17
    B.  Identification of Asserted State Interests, that Have Been
        Found to Be Not "Compelling" ......................................... 23

VI. Irreparable Harm, Balance of the Equities and the Public Interest ... 28

VII.  Conclusion................................................................... 29

# TABLE OF AUTHORITIES

-Page-

## Cases

<u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127 (9th Cir. 2011) ...…... 5

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986) …………………………………………….…….....… 3

<u>Buckley v. Valeo</u>, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ……..….… 18

<u>Burdick v. Takushi</u>, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) ..… 5

<u>California Democratic Party v. Jones</u>, 530 U.S. 567,120 S.Ct. 2402,
147 L.Ed.2d 502 (2000) ………………..…. 7, 8, 10, 18, 19, 20, 23, 24, 25, 26, 28

<u>Citizens United v. Federal Election Commission</u>, 558 U.S. 310, 130 S.Ct. 876,
175 L.Ed.2d 753 (2010)..…………………………..……………………....…..… 28

<u>Clingman v. Beaver</u>, 544 U.S. 581, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005)
…………………………………………………………………………….….……... 7

<u>Democratic Party of the United States v. Wisconsin ex rel. La Follette</u>, 450
U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981)………..…………… 8, 19, 20, 25

<u>Elrod v. Burns</u>, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ……..…. 18

<u>Eu v. San Francisco County Democratic Cent. Committee</u>,
489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) …..... 5, 6, 7, 17, 18, 26, 27

<u>Farris v. Seabrook</u>, 677 F.3d 858 (9th Cir. 2012) ………….………………… 4, 5

<u>Greenville County Republicans Party Executive Committee v. South
Carolina</u>, 824 F.Supp.2d 655 (D.S.C. 2011) ………………………..………… 10

Klein v. City of San Clemente, 584 F.3d 1196 (9th Cir. 2009) ……………...…. 28

Kusper v. Pontikes, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973) …….... 18

Lacasa v. Townsley, 883 F.Supp.2d 1231 (S.D. Fla. 2012) ..……...……...… 23

Miller v. Brown, 462 F.3d 312 (4th Cir. 2006) …………………………..…… 22

Miller v. Brown, 465 F.Supp.2d 584 (E.D.Va. 2006) ……...………… 21, 23, 24

Miller v. Brown, 503 F.3d 360 (4th Cir. 2007) …………….....………… 10, 13, 22

Miller v. Glenn Miller Prods, Inc, 454 F.3d 975 (9th Cir. 2006) ……….…... 4

Morse v. Republican Party of Virginia., 517 U.S. 186, 116 S.Ct. 1186,
134 L.Ed.2d 347 (1996) …………………………..……...…..……...… 22

NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d
1488 (1958) ……………………………………………...………….. 19

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099 (9th Cir. 2000) .... 3

New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 108 S.Ct.
2225, 101 L.Ed.2d 1 (1988) ……………………………..……..……… 9

Sammartano v. First Judicial District Court, in and for County of Carson
City, 303 F.3d 959 (9th Cir. 2002) ………………………….…..…..….. 29

Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311
(1957) ………………………………………………….....……… 21

Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544,
93 L.Ed.2d 514 (1986) …………………………….....…... 7, 8, 18, 20, 21, 23, 26

<u>Thalheimer v. City of San Diego</u>, 645 F.3d 1109 (9th Cir. 2011) ...……....… 28

<u>Wash. State Grange v. Wash. State Republican Party</u>, 552 U.S. 442, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) ……………………..…………..…..... 5, 6, 7, 9

<u>Winter v. Natural Res. Def. Council</u>, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ……………………………………….……...…………… 4

## Constitutional Authority

United States Constitution, Art. I, § 4, cl. 1 ………………...…………...……… 5

Hawai`i Constitution, Article II, Section 4 ………………….…..……..…….. 16

## Statutes

HRS § 11-204 ……………………………………..……………….…… 28

HRS § 12-1 ……………………..………..….…….…………… 12, 13, 15

HRS § 12-2 …………………………………..……....…………… 13, 15

HRS § 12-31 ……………………………………….....…..……… 14, 15, 16

HRS § 14-21 ………………………….…….…..………….…… 12, 13

## Rules

Fed. R. Civ. P. 56(c) ………………………………………..……… 3

Fed. R. Civ. P. 65(a)(d) …………………………………………...…… 4

## **Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment and Preliminary Injunction**

## I.   **Introduction**

Plaintiff Democratic Party of Hawai`i ("DPH") contends that Hawai`i's primary election law, which DPH must use to nominate[1] its candidates for the general election, is facially unconstitutional.

The term "electorate", when unmodified, indicates persons entitled to vote in a general election. We use the term "nomination electorate" to indicate the persons entitled to participate in the nomination of a party's candidates

Hawai`i has established two nomination procedures.  The one applicable to candidates for President of the United States is not at issue here.

The second nomination procedure is applicable to all other federal and state public offices.  Parties must nominate their candidates for those numerous offices through a state-run primary election.  All other

---

1.  An election chooses the person who will hold a public office for its term, but a nomination is the earlier process by which a political party chooses its candidate to contest the election.  The distinction may be blurred in the public mind, since both the primary and general are called "elections", but nomination processes involve separate constitutional rights.

nomination procedures are prohibited.  Importantly, Hawai`i also mandates that all eligible voters are able to participate in any party's nomination.  Each voter may, at his or her sole and secret discretion, with deliberation or on a whim, cast a vote in DPH's nomination; provided only that the voter must choose a single party in which to cast a vote.  In other words, Hawai`i has mandated that DPH's nomination electorate include all the members of the general election electorate.

Accordingly, the State of Hawai`i has consigned the most sensitive and important function of any political party, its nomination of standard bearers and exemplars of its deepest values, to persons who not only have no necessary relationship to DPH, and are unknown to DPH, but may, and in many cases no doubt do, reject and abjure the values of and membership in DPH, and whom DPH would reject as members or affiliates.  Since DPH prefers a nomination electorate consisting of its members and such non-members as are willing to publicly state some support for the DPH, the Hawai`i law amounts to forced political association, in violation of the First Amendment of the U.S. Constitution.

This case presents an actual conflict that is ripe for declaratory judgment, and may be decided as a matter of law by this Court. A preliminary injunction is appropriate.

## II.    Legal Standards

### A.  Standard for Summary Judgment

"Summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law. " <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 requires summary judgment to be granted when "the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgments as a matter of law." Fed. R. Civ. P. 56(c). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish,

beyond the pleadings, that there is a genuine issue for trial." <u>Miller v.</u>

<u>Glenn Miller Prods., Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006).  "A fact is

material if it could affect the outcome of the suit under the governing

substantive law." <u>Id</u>. 454 F.3d at 987.

### B.  Standard for Preliminary Injunction

A plaintiff seeking a preliminary injunction pursuant to Fed. R. Civ. P.

65 (a) and (d) must show that: (1) the movant is likely to succeed on the

merits, (2) the movant is likely to suffer irreparable harm in the absence of

preliminary relief, (3) the balance of equities tips in the movant's favor, and

(4) an injunction is in the public interest.  <u>Farris v. Seabrook</u>, 677 F.3d 858,

864 (9th Cir. 2012) (affirming district court's preliminary injunction order

prohibiting enforcement of contribution limits against movant on 1st

Amendment grounds); <u>see</u> <u>Winter v. Natural Res. Def. Council</u>, 555 U.S. 7,

20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).  The Ninth Circuit has also

recognized an alternate formulation of the <u>Winter</u> test, under which "

'serious questions going to the merits' and a balance of hardships that tips

sharply towards the plaintiff can support issuance of a preliminary

injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." <u>Farris v. Seabrook</u>, 677 F.3d at 864; <u>see</u> <u>also</u> <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011).

### C.  Standard for Challenges to Election Laws

Under the U.S. Constitution, the States have broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1.  However, the State's power over its election process is not absolute, and is subject to the limits established by the First Amendment associational rights of citizens and political parties. <u>Washington State Grange v. Washington State Republican Party</u>, 552 U.S. 442, 451, 128 S.Ct. 1184, 1191 (2008); <u>Eu v. San Francisco County Democratic Cent. Committee</u>, 489 U.S. 214, 222, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271 (1989).

It is unavoidable that election laws will impose some burden upon individual voters and political organizations. <u>Burdick v. Takushi</u>, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992).  "[T]he mere fact that

a State's system 'creates barriers... does not of itself compel close scrutiny.'" Id. (internal citations omitted).  Therefore, "[a] court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" Id. at 434, 112 S.Ct. at 2063; see also Eu, 489 U.S. at 222, 109 S.Ct. at 1019.

"If a statute imposes only modest burdens, then 'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions on election procedures." Wash. State Grange, 552 U.S. at 452, 128 S.Ct. 1184 (internal citations omitted). However, if election regulations impose a severe burden on First Amendment associational rights of citizens or political parties, they are subject to strict scrutiny, and the court will uphold them only if they are "narrowly tailored to serve a compelling state interest." Id. 552 U.S. at 451,

6

128 S.Ct.at 1191; Clingman v. Beaver, 544 U.S. 581, 585-86, 125 S.Ct. 2029, 2034 (2005); Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986); Eu, 489 U.S. at 222, 109 S.Ct. at 1019.  Such laws will only be upheld if they are "narrowly tailored to serve a compelling state interest. Clingman, 544 U.S. at 586, 125 S.Ct. at 2034.

Therefore, to determine whether an electoral law unconstitutionally infringes upon associational freedoms, the Court should first identify the nature of the associational right(s) asserted by the moving party.  The court then considers whether the law burdens that right and to what degree.  If the court finds that the magnitude of the burden on the party's associational right(s) is severe, the court applies strict scrutiny to further decide whether the burden is narrowly tailored to further a compelling interest of the State.  Wash. State Grange, 552 U.S. at 451, 128 S.Ct. at 1191-92; Clingman v. Beaver, 544 U.S. at 585-86, 125 S.Ct. at 2034; see also California Democratic Party v. Jones, 530 U.S. 567, 582, 120 S.Ct. 2402, 2412 (2000).

7

Jones, supra, is most instructive and deserves close study.  It is a case

where an exclusive and mandatory primary election system ignored

various parties' preferred nomination electorates, compelled the parties to

nominate candidates via the electorate at large, and thus seriously

burdened First Amendment associational rights, under circumstances that

are rather difficult to distinguish from the situation here.  The Supreme

Court vindicated the parties' preferences of nomination electorate, against

various purported compelling state interests, using principles applicable

here.

However, even before Jones, the Supreme Court has at least twice

struck down state statutes that conflicted with a party's choice of

nomination electorate.   A state party adopted a rule about its preferred

nomination electorate, and Connecticut law had to give way.  Tashjian, 479

U.S. at 208, 107 S.Ct. at 544.  A national party adopted a rule about its

nomination electorate and Wisconsin law had to give way.  Democratic

Party of the United States v. Wisconsin ex rel. La Follette, 450 U.S. 107, 101

S.Ct. 1010, 67 L.Ed.2d 82 (1981).  In both Connecticut and Wisconsin, the

primary electoral system had been in place for many years. Even so, a party's change of rule rendered long-standing statutes unconstitutional.

**D.  Standard for Facial Unconstitutionality in an Elections Law Context**

To prevail on a facial attack on a statute, a plaintiff must demonstrate that there is no set of circumstances under which the law could be validly applied.  See New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988).  Courts have also recognized an additional type of facial challenge which allows a finding of unconstitutionality in the First Amendment context where the challenged law is so broad that there is a realistic possibility that the law may inhibit the First Amendment rights of parties not before the court.  Id.  We submit both analyses can apply here.

"[A] facial challenge must fail where the statute has a plainly legitimate sweep."  Wash. State Grange, 552 U.S. at 449, 128 S.Ct. at 1190 (internal citations omitted). "In determining whether a law is facially invalid, [the court] must be careful not to go beyond the statute's facial

requirements and speculate about 'hypothetical' or 'imaginary' cases. " Id,

552 U.S. at 450, 128 S.Ct. at 1190 (internal citations omitted).  Facial

challenges are generally disfavored because they "threaten to short circuit

the democratic process by preventing laws embodying the will of the

people from being implemented in a manner consistent with the

Constitution. " Id. at 451.

Facial unconstitutionality will not be found "where state law provides

legitimate alternatives that do not restrict freedom of association."

Greenville County Republicans Party Executive Committee v. South

Carolina, 824 F.Supp.2d 655, 664 (D.S.C. 2011) (citing Jones, 530 U.S. at 577;

Miller v. Brown, 503 F.3d 360 (4th Cir. 2007)).  This case is cited to highlight

the difference between statutes that provide alternatives, and ones, as in

Hawai`i, that do not, as will be explored below.

A finding of facial unconstitutionality is concededly one which can be

made only after surpassing several analytic hurdles.  Still, DPH contends

that since Jones established that a mandatory and exclusive primary

election system that violates a party's choice of nomination electorate is a

severe burden on that party's First Amendment associational rights, and further established that almost every imaginable "compelling" state interest fails to justify that severe burden, then, under the simple facts of this case, a finding of facial unconstitutionality is easily made.

## III.   Germane Facts

Plaintiff DPH prefers a nomination electorate composed of its members, and other voters, even if they are not members, who are supportive of the DPH and are willing to publicly declare their affiliation with it.

Article I, Section 1. of the Constitution of the Democratic Party of Hawai`i, as Amended on May 27, 2012, as Certified by the State Central Committee on July 28, 2012, provides as follows:

> Section 1. General.
> The Democratic Party of Hawai`i shall be open to all persons who desire to support the Party, who wish to be known as Democrats, and who live in Hawai`i.
>
> The Democratic Party of Hawai`i believes that its primary election, a state-imposed mandatory nomination procedure, ought to be open to participation of only such persons as are willing to declare their affiliation with and support for the Party, either through public registration to vote, or through maintenance of membership in the Party. The Party further believes that the current Constitution

11

> and laws of the State of Hawai`i, by maintaining secrecy
> of affiliation, and by compelling the Party to admit to its
> nomination procedures those who may have no interest
> in, or actually oppose the interests, values, and platform of
> the Party, do violence to the Party's associational freedoms
> and the individual freedoms of its membership to define
> their own political views, guaranteed under the
> Constitution of the United States. The State Central
> Committee and Party Chairperson shall take appropriate
> action to correct this injustice.

(emphasis added).  See Declaration of Dante K. Carpenter, ¶ 4.  Through

use of the phrase "only such persons", this provision also expresses a

desire to prevent the participation of anonymous disinterested or

oppositional persons from participation in the DPH nomination process.

The second paragraph of Article I, Section 1, was adopted into the

Constitution of the Democratic Party of Hawai`i by action of its convention

on May 27, 2006.  See Declaration of Dante K. Carpenter, ¶ 4.  It has been

unamended since, and remains in force at the filing of this suit.

## IV.    Analysis of Hawai`i Primary Election Law

### A.    Hawai`i's Primary Election Law, Applicable to All Offices Other Than U.S. President, Is Both Mandatory and Exclusive

HRS § 12-1 provides, "All candidates for elective office, except as

provided in section 14-21, shall be nominated in accordance with this

chapter and not otherwise."  The procedures of Chapter 12, HRS, are the only legal method of party nomination, with one exception.

The exception, HRS § 14-21, provides that a political party may select its presidential electors by "party or group convention."  § 14-21 enables DPH to use its desired nomination electorate, and therefore DPH does not challenge § 14-21.

HRS § 12-2 states: "No person shall be a candidate for any general or special general election unless the person has been nominated in the immediately preceding primary or special primary."  This section reinforces § 12-1: the primary nomination is the sole gateway to the election.  § 12-2 reiterates the mandatory and exclusive nature of the primary process.

DPH does not contend that, without more, HRS §§ 12-1 and -2 violate DPH's rights.  However, the fact that HRS §§ 12-1 and -2 establish a mandatory and exclusive system is "constitutionally significant" because Hawai`i also has enacted HRS § 12-31, to which we now turn.  See Miller v. Brown, 503 F.3d at 367.

### B.     Hawai`i's Primary Election Law Makes It Illegal for DPH to Exercise Its Preference of Nomination Electorate

HRS § 12-31 states in pertinent part:

> No person eligible to vote in any primary or special primary election shall be required to state a party preference or nonpartisanship as a condition of voting. Each voter shall be issued the primary or special primary ballot for each party and the nonpartisan primary or special primary ballot.  A voter shall be entitled to vote only for candidates of one party or only for nonpartisan candidates.  If the primary or special primary ballot is marked contrary to this paragraph, the ballot shall not be counted.

DPH prefers that its nomination electorate be only its members, or those other persons who are willing to publicly register as DPH voters.  In a primary that permitted distinguishing voters by political orientation, this could be achieved.  Hawai`i's mandatory and exclusive primary system, however, with § 12-31, makes this impossible.

HRS § 12-31 enables every registered voter in Hawai`i, anonymously, to participate in the DPH nomination process.  All voters receive a packet of ballots, one for each party, including the DPH.  The voter then may privately select the DPH ballot, privately discard the others, and participate

in the DPH nomination.  Therefore, under HRS § 12-31, the nomination

electorate in a DPH primary, is the entire electorate.

Because Hawai`i's primary election system is both mandatory and

exclusive, under HRS §§ 12-1 and -2, and specifically prohibits any

identification of party preference or partisanship as a condition of casting a

primary ballot under § 12-31, DPH is powerless to exclude, from its

nomination, persons with, for example, the following political

characteristics:

- those who are indifferent to the beliefs of DPH;

- those whose interest in the party is fleeting or transient, or a matter
of momentary convenience or accident;

- those who are adherents of opposing parties; and

- those who have worked to undermine and oppose DPH.

Indeed, under Hawai`i law, persons who abhor the principles of the DPH

have no lesser right to participate in the DPH nomination, than do full

DPH members who have publicly staked their reputations on, and

volunteered time and money to support, their party.  It can fairly be said

that Hawai`i voters can nominate the candidates of political organizations

they would, as matter of conscience, refuse to join, and by which, in a

reciprocal exercise of conscience, they would be rejected.

The roots of HRS § 12-31 are in Hawai`i's Constitution, at Article II,

Section 4 (1978), which states:

> The legislature shall provide for the registration of voters
> and for absentee voting and shall prescribe the method of
> voting at all elections. Secrecy of voting shall be
> preserved; provided that <u>no person shall be required to
> declare a party preference</u> or nonpartisanship as a
> condition of voting in any primary or special primary
> election. <u>Secrecy of</u> voting and <u>choice of political party
> affiliation or nonpartisanship shall be preserved</u>.
> (emphasis added).

The constraint on DPH's preference of nomination electorate is generated

by more than mere statute.

The Hawai`i Constitution and statutes have done a good job of

slamming all doors to any process other than the mandated one, in which

the entire electorate, including persons of all political beliefs, can choose to

nominate the DPH standard bearers.  The collision between Hawai`i law

and DPH preference is manifest.  To the question of applicable rights, we

now turn.

## V.      Analysis of Associational Rights Under the U.S. Constitution, and Ostensible Justifications for Infringement Thereof

### A.  Analysis of First Amendment Associational Rights

#### 1.      The First Amendment Most Fully and Urgently Applies to Political Campaigns, Including Primary Election Campaigns, and Intra-Party Deliberations

The First Amendment "has its fullest and most urgent application" to

speech uttered during a campaign for political office.  <u>Eu</u>, 489 U.S. at 223,

109 S.Ct. at 1020.  "Free discussion about candidates is no less critical before

a primary than before a general election".  <u>Id</u>. at 223.  "In both instances,

'the election campaign is a means of disseminating ideas as well as

attaining political office.'"  <u>Id</u>.  State rules burdening a political party's

ability to endorse or oppose candidates infringe on freedom of speech and

freedom of association.  <u>Id</u>. at 224.  State rules that limit what people may

hear or say are "generally suspect" but are "particularly egregious" where

they limit discussions within a political party.  <u>Id</u>.

## 2. Political Parties and Their Members have First Amendment Rights to Free Speech and Free Association

Freedom of speech and freedom of association are First Amendment rights enjoyed by partisan political organizations. Eu, 489 at 224, 109 S.Ct. at 1020 (citing Tashjian and Elrod v. Burns, 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976) (plurality opinion)).

The Supreme Court has held that "the First Amendment protects 'the freedom to join together in furtherance of common political beliefs.'"Jones, 530 U.S. at 574, 120 S.Ct. at 2408, (quoting Tashjian, 479 U.S. at 214, 107 S.Ct. at 548).

The freedom of association protected by the First and Fourteenth Amendments includes partisan political organizations. Elrod v. Burns, 427 U.S. at 357; 96 S.Ct. at 2681; Buckley v. Valeo, 424 U.S. 1, 15, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976). "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." Kusper v. Pontikes, 414 U.S. 51, 57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973).

"It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which

embraces freedom of speech." NAACP v. Alabama ex rel. Patterson, 357

U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958).

> **3.   Freedom of Association Implies Not Only an Individual's Right to Associate with a Political Party, But the Party's Right to "Identify the People Who Constitute the Association" and to "Select a Standard-Bearer Who Best Represents the Party's Ideologies and Preferences." Eu, at 224.**

"A corollary of the right to associate is the right not to associate."

Jones, 530 U.S. at 574, 120 S.Ct. at 2408.  "In no area is the political

association's right to exclude more important than in the process of

selecting its nominee." Jones, 530 U.S. at 575, 120 S.Ct. at 2408.  "[T]he

freedom to associate for the common advancement of political beliefs

necessarily presupposes the freedom to identify the people who constitute

the association, and to limit the association to those people only." La

Follette, 450 U.S. at 122, 101 S.Ct. at 1019.

"Freedom of association would prove an empty guarantee if

associations could not limit control over their decisions to those who share

the interests and persuasions that underlie the association's being." La

Follette, 450 U.S. at 122, n.22, 101 S.Ct. at 1019.

"[T]he inclusion of persons unaffiliated with a political party may seriously impair the party's essential functions -- and [therefore] political parties may ... protect themselves from intrusion by those with adverse political principles."  La Follette, 450 U.S. at 122, 101 S.Ct. at 1019.

### 4.  Either Restricted Association or Compelled Association, Through Designation of a Nomination Electorate, Can Be Unconstitutional

In the absence of compelling state interest, the First Amendment is therefore violated both when a political party is restricted in the voters it can invite "to participate in the basic function of selecting the Party's candidates", Tashjian, 479 U.S. at 215-16, 107 S.Ct. at 549, and when a law "forces political parties to associate with -- to have their nominees, and hence their positions, determined by -- those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival."  Jones, 530 U.S. at 577, 120 S.Ct. at 2409.  There can be "no heavier burden on a political party's associational freedom."  Jones, 530 U.S. at 582, 120 S.Ct. at 2412.

"Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents."  La Follette, 450 U.S. at 122,

101 S.Ct. at 1019; <u>see</u> <u>also</u> <u>Sweezy v. New Hampshire</u>, 354 U.S. 234, 250, 77

S.Ct. 1203, 1212, 1 L.Ed.2d 1311 (1957); <u>see</u> <u>also</u> <u>Tashjian</u>, 479 U.S. at 214-15,

107 S.Ct. at 548-49.

> **5.    If a State Law Allows a Party a Choice of How to Nominate Its Candidates, and One of the Choices Permits the Party to Use the Nomination Electorate of Its Preference, the Law Is Not Likely To Be Facially Unconstitutional.  <u>See</u> <u>Miller v. Brown</u>, 465 F.Supp.2d 584, 593 (E.D.Va. 2006).**

Systems including components that compel association with the

general election electorate may survive scrutiny if they are not mandatory

and exclusive, but rather include other options that do not compel

association.  The following extended quotation is from <u>Miller v. Brown</u>, 465

F.Supp.2d. at 591-92, in which the court considered a Virginia statute that

required that a party utilize either Virginia's "open primary" (akin to

Hawai`i's), or some other nomination procedure in its discretion.

> There is little doubt that a statute forcing a political party to select its nominee solely by open primary would pose a severe and perhaps constitutionally impermissible burden on its freedom of association.  Indeed, the resulting selection would hardly reflect the true sentiments of the actual members of the political party.  Moreover, Defendants appear to concede this point.  The defendants, however, argue that the statutory scheme in Virginia is distinguishable, because it does not force a political party to participate in an open primary.  The Virginia open

21

primary law merely permits a party to utilize an open primary as its method of candidate selection if it chooses to do so.  If the party wishes to exclude nonmembers, it may conduct either a mass meeting, convention, or a party canvas.

Therefore, from a facial perspective, if § 24.2–530 was the only means of selecting a party's nominee, the statute may well pose a severe burden on a political party's associational freedom.  See Miller v. Brown, 462 F.3d 312, 318 (4th Cir. 2006).  The defendants maintain, however, that Virginia's election law must be examined in its totality to determine whether it imposes an impermissible burden. Only "governmental action that may have the effect of curtailing freedom to associate is subject to the closest scrutiny." Morse v. Republican Party of Va., 517 U.S. 186, 228, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996) (internal quotations omitted).  It is this Court's view that the statute must be viewed in context of all available methods of candidate selection under Virginia law.  After undertaking a facial review of Virginia's nomination scheme, the Court will turn to the question of whether Virginia's election law is constitutionally sound as applied to the plaintiffs under the more narrow facts of this case.

But if the law is mandatory and exclusive, that is "constitutionally significant" because then the party has no avenue in which it can use its preferred electorate.  Miller v. Brown, 503 F.3d at 367.

22

**B.    Identification of Asserted State Interests, that Have Been Found to Be Not "Compelling"**

**1.    Non-Party-Member Voter's "Right" to Associate with Political Party of His Choice, Despite the Party's Objection.**

"[A] 'nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications.' " Jones, 530 U.S. at 583, 120 S.Ct. at 2412 (quoting Tashjian, 479 U.S. at 215–16, n. 6).  See also, Miller v. Brown, 465 F.Supp.2d at 595 and, Lacasa v. Townsley, 883 F. Supp. 2d 1231 (S.D. Fla. 2012).

**2.    Protection of the Individual Voter's Freedom from Reporting His or Her Political Preferences to the Government**

"Even if (as seems unlikely) a scheme for administering a closed primary could not be devised in which the voter's declaration of party affiliation would not be public information, we do not think that the State's interest in assuring the privacy of this piece of information in all cases can conceivably be considered a 'compelling one.' " Jones, 530 U.S. at 585, 120 S.Ct. at 2413.  This is not a matter of medical privacy, personal finances, or matters solely within one's home or marriage.  Politics, by its nature, is a

public behavior.  "If such information [party affiliation] were generally so sacrosanct, federal statutes would not require a declaration of party affiliation as a condition of appointment to certain offices."  Jones, 530 U.S. at 584-85; Miller v. Brown, 465 F.Supp.2d at 595.

### 3.   The Open Primary Law Is Asserted to Promote the Integrity of the Electoral Process and Encourage Voter Participation.

These interests are laudable, but also fall short of being compelling ones.  See e.g., Jones, 530 U.S. at 584–85, 120 S.Ct. at 2413; Miller v. Brown, 465 F.Supp.2d at 595.

### 4.   An Open Primary Is Thought to Expand Debate Beyond the Scope of Partisan Concerns.

This is simply a circumlocution for producing nominees and nominee positions other than those the party would choose if left to its own devices, and is not a compelling state interest.  Jones, 530 U.S. at 582.

### 5.   An Open Primary Produces Elected Officials Who Better Represent the Electorate.

This also is "circumlocution for producing nominees and nominee positions other than those the parties would choose if left to their own

devices."  This rationale is a "stark repudiation of political association."

Jones, 530 U.S. at 582.

**6.     The Open Primary Law Removes Control of a Party from "Party Bosses".**

Even though Wisconsin's open primary statute was enacted to

minimize the influence of "party bosses", La Follette 450 U.S. at 128

(dissenting opinion of Powell), the Supreme Court struck down a long-

standing Wisconsin law that contradicted a newly-enacted party rule about

its nomination electorate.

**7.     The Democratic Party of Hawai`i Is so Dominant that the DPH Primary Is Frequently Decisive and Voters Who Are Not Democrats Would Be Disenfranchised If Not Allowed to Vote in the DPH Primary.**

In this rationale, "disenfranchised" does not mean "prohibited from

voting", and thus is a distortion of important terms.  This rationale is

nothing more than nonmembers characterizing their frustration (at being

unable to vote with a party they will not join) as "disenfranchisement."  "A

voter's desire to participate in the party's affairs is overborne by the

countervailing and legitimate right of the party to determine its own

membership qualifications."  The voter's desire "does not become more

25

weighty simply because the State supports it." Jones, 530 U.S. at 583.  We

might add, voters who are uncomfortable with the status quo may feel free

to organize an alternative.

**8.    The Change in Balloting Procedures for a Particular Party
        Would Cost Too Much.**

"[T]he possibility of future increases in the cost of administering the

election system is not a sufficient basis here for infringing appellees' First

Amendment rights."  "While the State is of course entitled to take

administrative and financial considerations into account in choosing

whether or not to have a primary system at all, it can no more restrain ...

freedom of association for reasons of its own administrative convenience

than it could on the same ground limit the ballot access of a new major

party." Tashjian, 479 U.S. at 218, 107 S.Ct. at 551.

**9.    The State Has an Interest in Ensuring that Parties Make
        Wise Choices Between Moderation and Partisanship.**

This is not the State's choice to make; it's up to the party.  Jones at 587

(concurring opinion of Powell).  It is not the State's role to "save a political

party from pursuing self-destructive acts." Eu at 227.

**10.    The State Has an Interest in Mitigating Intraparty
Factionalism, to Support Stable Government.**

This proposed compelling interest failed in <u>Eu</u>.  To the contrary, the

law requires states to avoid interfering with intraparty factionalism.  States

may prevent the disruption of political parties from without, but may not

enact laws "to prevent the parties from taking internal steps affecting their

own process for the selection of candidates."  "[P]reserving party unity

during a primary is not a compelling state interest." <u>Eu</u>, at 227-28.

**11.    The State Need Not Show a Compelling State Interest
Because DPH Has Heretofore Acquiesced in the Primary
Election Law by Participating.**

Such an acquiescence argument is no stronger in this case than in <u>Eu</u>,

where it was rejected.  The Supreme Court has "never held that a political

party's consent will cure a statute that otherwise violates the First

Amendment." <u>Eu</u>, n. 15

**12.    Parties Can Spend Their Own Money to Promote Their
Favored Candidates in an Open Primary, If They Don't Like
Participation of Non-Members.**

Not true; their ability to spend their own money on their own

candidates is significantly curtailed by election law, which considers such

expenditures as contributions and caps them at a relatively low level.  Jones 530 U.S. at 587-88, 120 S.Ct. at 2415 (concurring opinion of Powell, J.).  See also, HRS § 11-204.  In the aftermath of Citizens United v. Federal Election Commission, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), organizations other than parties can spend unlimited amounts of money in independent expenditures to drive voters across party lines to affect party nominations in an open primary.  Accordingly, the ability of a party to define its nomination electorate is even more important now than before Citizens United.

## VI.    Irreparable Harm, Balance of the Equities and the Public Interest.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Thalheimer v. City of San Diego, 645 F.3d 1109, 1128 (9th Cir. 2011) (enjoining restrictions on movant's speech and associational rights outweigh disruption to administration of municipal campaign finance system).  Since timing is of the essence in politics, any continued deprivation of Plaintiff DPH's First Amendment rights is constitutionally intolerable.  See e.g., Klein v. City of

San Clemente, 584 F.3d 1196, 1207 (9th Cir. 2009);  Sammartano v. First

Judicial District Court, in and for County of Carson City, 303 F.3d 959, 974

(9th Cir. 2002) ("Courts considering requests for preliminary injunctions

have consistently recognized the significant public interest in upholding

First Amendment principles.").  Therefore, the public interest in upholding

DPH's free speech and associational rights clearly outweighs Defendant's

continued enforcement of Hawai`i's mandatory and exclusive state

nomination process.

## VII. Conclusion

Hawai`i's Constitution and statutes, cited above, read together,

require that DPH admit to its nomination process each and every voter

inclined to participate.  DPH is by law powerless to devise any criteria that

would limit the nomination electorate imposed by the State.  This prohibits

DPH from nominating its candidates using its preferred nomination

electorate, and severely burdens DPH's associational rights guaranteed by

the First Amendment of the U.S. Constitution.  State interests are not

compelling.  Hawai`i primary election law cannot be read other than to severely burden rights, and is thus facially unconstitutional.

DPH requests that this Court enter partial summary judgment to the effect that the First Amendment of the Constitution has been violated, as described herein, and issue a preliminary injunction against the Defendant, preventing him from enforcing Hawai`i law, as requested in the motion.

DATED: Honolulu, Hawai`i, June 17, 2013.

GILL, ZUKERAN & SGAN

By:_____
T. Anthony Gill

Attorneys for Plaintiff
Democratic Party of Hawai`i