IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEMOCRATIC PARTY OF HAWAII,<br><br>       Plaintiff,<br><br>vs.<br><br>SCOTT T. NAGO, in his official capacity as Chief Election Officer of the State of Hawaii,<br><br>       Defendant. | CIVIL NO. CV13-00301 JMS/KSC |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

STANDARDS FOR SUMMARY JUDGMENT AND
PRELIMINARY INJUNCTIVE RELIEF ................................................. 2

ARGUMENT ...................................................................................... 3

A.   This Court Should Exercise Great Caution
Before Striking Down State Election Laws ..................................... 3

B.   The Party's Facial Challenge Fails Under *Salerno* and
Its As-Applied Challenge Fails Because the Party Provides
No Factual Support ...................................................................... 6

    1.   The Party's Facial Challenge Fails Under *Salerno* .............. 6

    2.   The Party Makes No As-Applied Challenge and Even If
It Had, An As-Applied Challenge Would Fail Because It
Relies on Assumptions Alone and Lacks Any True
Factual Support ..................................................................... 9

C.   The Party Fails to Demonstrate that Its Associational Rights
Are Severely Burdened Because Primary Voters Do Affiliate
with the Party ............................................................................ 12

D.   The State's Interests in the Open Primary
Outweigh the Party's Associational Rights ................................. 21

    1.   The Open Primary Enhances the Democratic Process
By Removing Barriers to Voter Participation ..................... 22

    2.   The Privacy Afforded by the Open Primary Preserves the
Integrity of the Democratic Process By Protecting Voters
from Coercion ..................................................................... 23

    3.   The Open Primary Supports a Vibrant Multi-Party
System ................................................................................. 25

E.   The Party Cannot Meet the Other Three Prongs for Preliminary
or Permanent Injunctive Relief .................................................. 28

F.      Even if This Court Strikes Down the Open Primary,
        Restructuring the Election Laws is the Sole Prerogative of the
        Hawaii State Legislature ................................................................................ 29

CONCLUSION ...................................................................................................... 34

Civil No. CV13-00301 JMS/KSC

# TABLE OF AUTHORITIES

<u>CASES</u>:

<u>Arizona Libertarian Party v. Bayless</u>,
    351 F.3d 1277 (9th Cir 2003) .................................................. 8, 10

<u>Austin v. Michigan Chamber of Commerce</u>,
    494 U.S. 652 (1990)................................................................. 28

<u>Ayotte v. Planned Parenthood of N. New England</u>,
    546 U.S. 320 (2006)................................................................... 6

<u>Buckley v. Valeo</u>,
    414 U.S. 1 (1976)....................................................................... 4

<u>Burson v. Freeman</u>,
    504 U.S. 191 (1992)...................................................16, 21, 24-25

<u>California Democratic Party v. Jones</u>,
    530 U.S. 567 (2000)...........................1, 8, 10, 12-16, 19-21, 25, 27, 31

<u>Chamness v. Bowen</u>,
    722 F.3d 1110 (9th Cir. 2013) .................................................. 31

<u>Citizens United v. Fed. Election Comm'n</u>,
    558 U.S. 310 (2010)................................................................. 28

<u>Clingman v. Beaver</u>,
    544 U.S. 581 (2005)...........................3, 7, 10, 13-15, 18-20, 22, 26, 31

<u>Democratic Party of the United States v. Wisconsin ex rel. La Follette</u>,
    450 U.S. 107 (1981)...................................................... 13, 14, 15

<u>Eu v. San Francisco Cnty. Democratic Cent. Comm.</u>,
    489 U.S. 214 (1989).......................................................... 24, 26

<u>Hale v. Dep't. of Energy</u>,
    806 F.2d 910 (9th Cir. 1986).................................................... 29

<u>Lightfoot v. Eu</u>,
    964 F.2d 865 (9th Cir. 1992) ......................................22-23, 29, 32

Miller v. Brown,
   503 F.3d 360 (4th Cir. 2007) ............................................................ 20

Oden v. Brittain,
   396 U.S. 1210 (1969) ...................................................................... 5

Reynolds v. Sims,
   377 U.S. 533 (1964) ........................................................................ 33

Tashjian v. Republican Party of Connecticut,
   479 U.S. 208 (1986) ................................................................... 11, 27

Timmons v. Twin Cities Area New Party,
   520 U.S. 351 (1997) .............................................. 3, 10, 16, 21, 26

United States v. Salerno,
   481 U.S. 739 (1987) .................................................................. 1, 6, 7

Wash. State Grange v. Wash. State Republican Party,
   552 U.S. 442 (2008) ..................................................................... 7, 8

Wash. State Republican Party v. Wash. State Grange,
   676 F.3d 784 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 110 (2012).............. 9, 10, 31

Winter v. Natural Res. Def. Council,
   555 U.S. 7 (2008) ...................................................................... 2, 28

Wise v. Lipscomb,
   437 U.S. 535 (1978) ........................................................................ 33

CONSTITUTIONS, STATUTES, and LEGISLATION:

U.S. Const. Art. I § 4 ............................................................................ 4

First Amendment .................................................................. 1, 3, 9, 10

Fourteenth Amendment ........................................................................ 3

Haw. Const. Art. I § 6 .......................................................................... 23

Haw. Const. Art. II § 4 ................................................................*passim*

Haw. Const. Art. II § 8 ............................................................ 30, 31, 34

Haw. Const. Art. XVII § 3 ........................................................................... 30

Haw. Rev. Stat. § 11-11 .............................................................................. 33

Haw. Rev. Stat. § 11-15 .............................................................................. 32

Haw. Rev. Stat. § 11-204 ............................................................................ 28

Haw. Rev. Stat. § 11-363 ............................................................................ 28

Haw. Rev. Stat. § 12-1................................................................................. 17

Haw. Rev. Stat. § 12-31 ......................................................... 5, 15, 16, 17, 30

Haw. Rev. Stat. § 14-21 .............................................................................. 17

1979 Haw. Sess. L. Act 139 ...................................................................... 5, 32

2010 Haw. Sess. L. Act 211 ......................................................................... 28

*Proceedings of the Constitutional Convention of Hawaiʻi of 1978*
   *(1980)*...................................................................................................22, 24

## OTHER STATES' STATUTES:

Ala. Code 1975 § 17-13-7 .............................................................................. 5

Ga. Code Ann. 21-2-224 ................................................................................ 5

10 Ill. Comp. Stat. § 5/7-43 .......................................................................... 6

Iowa Code § 43.1.......................................................................................... 6

Minn. Stat. § 204D.08 .................................................................................. 5

Mo. Rev. Stat. § 111.397.............................................................................. 5

N.D. Cent. Code § 16.1-11-22....................................................................... 5

Utah Code Ann. § 20A-2-107.5 ..................................................................... 6

Vt. Stat. Ann. tit. 17 § 2363.......................................................................5-6

<u>RULES</u>:

Fed. R. Civ. P. 19 ................................................................................................... 33

Fed. R. Civ. P. 56(a) ................................................................................................ 2

Civil No. CV13-00301 JMS/KSC

## INTRODUCTION

This case is about Hawaii's open primary system. There is one claim: whether the open primary violates the Democratic Party of Hawaii's freedom of association under the First Amendment. The answer is no. As detailed below, neither a facial nor an as-applied challenge can succeed here. The Party bears a heavy burden as plaintiff. The Party fails to carry that burden: its facial challenge necessarily fails under the rigorous standard from United States v. Salerno, 481 U.S. 739 (1987), and it offers no facts on which an as-applied challenge could be premised. The Party's motions should be denied for that reason alone.

Even if this Court reaches the as-applied challenge, the Party has failed to demonstrate that the open primary places a *severe* burden on its associational rights, because voters in an open primary *do* affiliate with the Party. See California Democratic Party v. Jones, 530 U.S. 567, 577 n.8 (2000) ("The act of voting in the Democratic primary fairly can be described as an act of affiliation with the Democratic Party.") (internal quotation marks and citation omitted). And regardless of whether that burden is judged to be severe or modest, the State's interests in supporting the democratic process, removing barriers to voting, privacy, and supporting a vibrant multi-party system are sufficient to justify the open primary and uphold its constitutionality.

1

Finally, *even if* this Court were to decide that the open primary is unconstitutional, this Court's role in this dispute would end with that ruling. The Court should disregard the Party's invitation to rewrite the Hawaii State Constitution and the statutes governing the primary and voter registration. Refashioning the primary, should it prove necessary, is the sole prerogative of the Hawaii State Legislature.

The open primary is constitutional. This Court should grant Defendant's counter-motion for summary judgment, and deny both of the Party's motions.

## STANDARDS FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTIVE RELIEF

The Party seeks a preliminary injunction and a partial summary judgment order. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). The same prongs govern the issuance of a permanent injunction, except actual success on the merits is required. Id. at 32.

Summary judgment is granted when there is no genuine issue of material fact and the movant demonstrates that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

2

"When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary.  Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. *Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests' will usually be enough to justify reasonable, nondiscriminatory restrictions. . . .* No litmus-paper test separates those restrictions that are valid from those that are invidious.  The rule is not self-executing and is no substitute for the hard judgments that must be made." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358-59 (1997) (emphasis added, citations and internal quotation marks omitted).

## ARGUMENT

### A.    This Court Should Exercise Great Caution Before Striking Down State Election Laws

The State of Hawaii's role in running the elections is a highly significant one.  The federal constitution acknowledges the States' authority to regulate elections.  See Clingman v. Beaver, 544 U.S. 581, 586 (2005) ("The States have "broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' which power is matched by state control over the

3

election process for state offices.") (quoting U.S. Const. Art. I § 4; other citations

omitted).  And there is no question that operating the raw machinery of

democracy—the ballots, the polling places—is at the heart of the State's authority

and privilege to support and sustain the democratic process.  These interests are of

the highest order in this country: "the people are sovereign[.]" <u>Buckley v. Valeo</u>,

414 U.S. 1, 14 (1976).  Because the Party's challenge seeks to upend Hawaii's

longstanding open primary system, the State's interests lie in supporting the

democratic process.

The Party's challenge to the open primary questions the constitutionality of

two provisions.  First, the Hawaii State Constitution requires that the primary be

open:

> The legislature shall provide for the registration of voters and for absentee
> voting and shall prescribe the method of voting at all elections. Secrecy of
> voting shall be preserved; ***provided that no person shall be required to
> declare a party preference or nonpartisanship as a condition of voting in
> any primary or special primary election.*** Secrecy of voting and choice of
> political party affiliation or nonpartisanship shall be preserved.

Haw. Const. Art. II § 4 (emphasis added).  This provision governing the open

primary was added to the State Constitution in 1978.[1]  <u>Id.</u>  Second, in 1979 the

---

[1] Before this addition, the provision read: "The legislature shall provide for the
registration of voters and for absentee voting; and shall prescribe the method of
voting at all elections.  Secrecy of voting shall be preserved." Haw. Const. Art. II
§ 4 (1968).

Legislature implemented this requirement in statutory law. 1979 Haw. Sess. L.

Act 139 (Ex. D). The provision is unchanged since then:

> No person eligible to vote in any primary or special primary election shall be required to state a party preference or nonpartisanship as a condition of voting. Each voter shall be issued the primary or special primary ballot for each party and the nonpartisan primary or special primary ballot. A voter shall be entitled to vote only for candidates of one party or only for nonpartisan candidates. If the primary or special primary ballot is marked contrary to this paragraph, the ballot shall not be counted.

> In any primary or special primary election in the year 1979 and thereafter, a voter shall be entitled to select and to vote the ballot of any one party or nonpartisan, regardless of which ballot the voter voted in any preceding primary or special primary election.

Hawaii Revised Statutes (HRS) § 12-31. The first open primary under this system

was in 1980. Nago Decl. Hawaii's primary has been open ever since. Id.

Election laws are the true center of the State's sovereignty and authority

over the democratic process. For that reason, this Court should exercise special

caution before striking down these laws. Oden v. Brittain, 396 U.S. 1210, 1211

(1969) ("Intervention by the federal courts in state elections has always been a

serious business.") The Party's challenge is necessarily limited to Hawaii's open

primary. But there are many other States that have either open primaries or other

primary systems where fluid voter registration allows voters to move easily

between the primaries of different parties.[2] This factor also cautions restraint.

---

[2] See, e.g., Ala. Code 1975 § 17-13-7; Ga. Code Ann. 21-2-224; Minn. Stat. § 204D.08 ; Mo. Rev. Stat. § 111.397; N.D. Cent. Code § 16.1-11-22; Vt. Stat. Ann.

Courts always act carefully when striking down laws as unconstitutional, because these laws were enacted by democratically-elected representatives. <u>See Ayotte v. Planned Parenthood of N. New England</u>, 546 U.S. 320, 329 (2006) ("we try not to nullify more of a legislature's work than is necessary, for we know that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.") (citation, brackets and internal quotation marks omitted). This is never more true than here, where the laws challenged concern the operation of the State's elections, and the specific requirement challenged here was added as a result of popular vote. Nago Decl.  For all of these reasons, this Court should act with special caution.

**B.      The Party's Facial Challenge Fails Under *Salerno* and Its As-Applied Challenge Fails Because the Party Provides No Factual Support**

*1.      The Party's Facial Challenge Fails Under <u>Salerno</u>*

The Party specifically claims that the open primary is *facially* unconstitutional.  Doc. 4 at 3; Doc. 4-1 at 30.  Claims of facial unconstitutionality turn on the premise that the statute is *always* unconstitutional.  Or, as articulated in the controlling test: "the challenger must establish that *no set of circumstances exists* under which the Act would be valid." <u>United States v. Salerno</u>, 481 U.S.

---

tit. 17 § 2363 (all open primaries); 10 Ill. Comp. Stat. § 5/7-43 (public declaration of affiliation sufficient in order to vote, no formal party registration required); Iowa Code § 43.1 (must be registered but can change party affiliation at any time, including the day of the primary); Utah Code Ann. § 20A-2-107.5 (unaffiliated voter may change party affiliation on election day).

739, 745 (1987) (emphasis added).  This is the proper test for a facial challenge to

a primary law.  See Wash. State Grange v. Wash. State Republican Party, 552 U.S.

442, 449 (2008) ("a plaintiff can only succeed in a facial challenge by establishing

that no set of circumstances exists under which the Act would be valid, i.e., that the

law is unconstitutional in all of its applications.") (internal quotation marks,

brackets and citation omitted) (quoting Salerno).  The Party cannot sustain this

burden here.

The open primary is clearly constitutional as applied to any party that wants

to open its primary to all voters.  This was the situation in Clingman v. Beaver, 544

U.S. 581 (2005).  The Libertarian Party of Oklahoma wanted to open its primary to

"all registered Oklahoma voters, without regard to their party affiliation."  Id. at

585.  Because the Party must demonstrate here that "no set of circumstances

exists" under which the open primary would be valid, Salerno, 481 U.S. at 745,

their claim of facial unconstitutionality necessarily fails.  It is easy to posit a

situation in which the open primary could be (and is) constitutionally applied; the

situation is already documented in the case law.

Furthermore, the Party's facial challenge has the same flaw as the facial

challenge brought in Washington State Grange.  In that case, the Supreme Court

took the challengers to task for attempting to overturn a state primary system as

facially unconstitutional based on nothing but speculation.  "[T]hese cases involve

a facial challenge, and we cannot strike down I-872 on its face based on the *mere possibility* of voter confusion." Washington State Grange, 552 U.S at 455 (emphasis added). "[W]e have no evidentiary record against which to assess their assertions[.]" Id. The same is true here: the Party's claim of facial unconstitutionality is based on *assumptions*, not facts.[3]

For both of these reasons, the Party's claim that the open primary is *facially* unconstitutional is entirely mistaken. See Washington State Grange (overturning grant of summary judgment in parties' favor on facial challenge to "top two" primary law). The Party's facial challenge should be rejected on this ground alone. The open primary is facially constitutional; Defendant's motion should be granted.

---

[3] For example, the Party speculates that voters from other parties may "raid" the primary in order to vote for a perceived weaker candidate, who would then face their own party's candidate in the general election. Doc. 1 at 13. Yet the Party offers no *proof* that such a practice *actually occurs*. See, e.g., Arizona Libertarian Party v. Bayless, 351 F.3d 1277, 1282 (9th Cir. 2003) (observing that the Supreme Court in Jones "treated the risk that nonparty members will skew either primary results or candidates' positions as a *factual issue, with the plaintiffs having the burden of establishing that risk*[.]") (emphasis added). The Party also assumes that primary voters who participate in the Democratic primary but are not Party members have political interests hostile to that of the Party. Doc. 4-1 at 15-16. Yet, given the political makeup of our State, isn't it at least as likely (if not more likely) that many (or even most) of those voters would identify themselves politically as Democrats even if they are not formal members? These are the sort of factual questions that the Party's motion for summary judgment leaves completely unanswered.

2.    *The Party Makes No As-Applied Challenge and Even If It Had, An As-Applied Challenge Would Fail Because It Relies on Assumptions Alone and Lacks Any True Factual Support*

The Party does *not* explicitly raise an as-applied challenge.  The only places where the distinction between a facial and an as-applied challenge appears is in the Party's motion and memo where it specifically states (in relation to the motion for partial summary judgment) that the primary election law is "facially unconstitutional."  Doc. 4 at 3; Doc. 4-1 at 9-11, 30.  The Party emphasizes the standard for facial unconstitutionality at some length.  Id. at 9-11.  Given the Party's apparently intentional choice to limit its claim to a facial challenge *only*, the Party's filings should not be read to raise an as-applied challenge.  And as explained above, the facial challenge is wholly misplaced.  This Court should therefore deny the Party's motions, and grant Defendant's counter-motion.

*Even if* this Court reads the complaint as raising an as-applied challenge, that challenge also fails.  The Party must demonstrate the unconstitutionality of the open primary.  Wash. State Republican Party v. Wash. State Grange, 676 F.3d 784, 791 n.4 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 110 (2012) ("Under the First Amendment, plaintiffs bear the initial burden of demonstrating that a challenged election regulation severely burdens their First Amendment rights.").  Plaintiff bears this ultimate burden of persuasion.

9

The critical inquiry is whether the Party's associational rights have been "severely" burdened or only subject to a "lesser" burden. See Clingman, 544 U.S. at 592 ("[N]ot every electoral law that burdens associational rights is subject to strict scrutiny. Instead, . . . strict scrutiny is only appropriate if the burden is severe.") (citations omitted). The Party's filings depend upon its arguments that its associational rights have been severely burdened. Doc. 1; Doc. 4-1.

Yet the Party reaches this conclusion not on *facts* showing that its associational rights *have actually been* burdened, but on suppositions and assumptions about how the electorate behaves and what individual voters' motivations might be. Doc. 1 at 10-14; Doc. 4-1 at 15-16. The case law shows that these factual assertions cannot be assumed; they must be *proven*. *In other words, in order to establish that the Party's associational rights have been "severely burdened," the Party must show that such burdens have occurred, not just restate assumptions without proof.* See, e.g., Timmons v. Twin Cities Area New Party, 520 U.S. 351, 361 (1997) (stating, in rejecting associational claim: "[t]his is a predictive judgment which is by no means self-evident."); Wash. State Republican Party, 676 F.3d at 791 n.4 ("Under the First Amendment, plaintiffs bear the initial burden of demonstrating that a challenged election regulation severely burdens their First Amendment rights."); Bayless, 351 F.3d at 1282 (Jones "treated the risk that nonparty members will skew either primary results or

Civil No. CV 13-00301 JMS/KSC

candidates' positions as a *factual issue, with the plaintiffs having the burden of establishing that risk*[.]") (emphasis added).  As Plaintiff, the Party must *prove* that the burden on its associational rights is "severe."

The Party has wholly failed to meet that burden here.  It offers *no* facts to support its assumptions and suppositions about how primary voters behave.  The only fact it offers is restating the Party's preference that the primary be closed, as reflected in the Party's constitution.  Doc. 5 at 3.  This fact does nothing to demonstrate that the open primary actually burdens the Party's associational rights, much less establish that that burden is severe.  Because the ultimate burden for this proposition rests with the Party, as plaintiff, their failure to provide any facts dooms their motion for summary judgment from the start.

One unique quality of associational-rights challenges further highlights the need for *proof*.  In challenges to primary systems, the political party's *own preferences* for how the primary is run matter a great deal.  In Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986), the closed primary was unconstitutional as applied to the Republican Party, when the party wanted to open its primary to independent voters.  Had the Republican Party *wanted* the primary to be closed (as the Democratic Party does here), then it would have been constitutional as applied to it.  But a political party's own preferences can change over time.  A closed primary might be unquestionably constitutional as applied to a

11

political party on Tuesday, yet be subject to a constitutional challenge on Wednesday, after the party has changed its preference for how the primary should be conducted.

Here, the Party here seeks to strike down a longstanding election law *without any actual facts* showing a severe burden on its associational rights. In sum, therefore, **the Party's assertion that the open primary is unconstitutional amounts to nothing more than a statement of its own preferences**. Striking down a State election law based on nothing more than a litigant's stated preferences would be anomalous indeed. Yet that is exactly what the Party seeks to do now. The total lack of factual proof is fatal to their motion for summary judgment, and Defendant's counter-motion should be granted.[4]

## C.   The Party Fails to Demonstrate that Its Associational Rights Are Severely Burdened Because Primary Voters *Do* Affiliate with the Party

The Party's entire case depends upon its assertion that its associational rights have been "severely" burdened. Docs 1, 4-1. Yet the Party offers no facts to support that assertion. *Even if* this Court disregards the Party's lack of factual support, the Party still cannot prevail, because its associational rights have *not* been severely burdened. The Party's reliance on <u>California Democratic Party v. Jones</u>, 530 U.S. 567 (2000) is misplaced. Open primaries (where voters participate in

---

[4] The motion for preliminary injunction would also fail, because the same inquiry establishes that the Party has no likelihood of success on the merits.

only one primary for all offices) and blanket primaries (where voters may move

freely between the primaries of different parties for all offices) do *not* affect the

political parties' associational rights in the same manner. The United States

Supreme Court highlighted this exact distinction in Jones:

> [A blanket primary] is qualitatively different from a closed primary. Under that system, even when it is made quite easy for a voter to change his party affiliation the day of the primary, and thus, in some sense, to "cross over," at least he must formally become a member of the party; and once he does so, he is limited to voting for candidates of that party.[8]
>
> [8] In this sense, *the blanket primary also may be constitutionally distinct from the open primary, in which the voter is limited to one party's ballot. The act of voting in the Democratic primary fairly can be described as an act of affiliation with the Democratic Party.* The situation might be different in those States with 'blanket' primaries—i.e., those where voters are allowed to participate in the primaries of more than one party on a single occasion, selecting the primary they wish to vote in with respect to each individual elective office. *This case does not require us to determine the constitutionality of open primaries.*

Jones, 530 U.S. at 577 and n.8 (emphases added; citations, internal quotation

marks, ellipses and brackets omitted) (quoting Democratic Party of the United

States v. Wisconsin ex rel. La Follette, 450 U.S. 107, 130 n.2 (1981) (Powell, J.,

dissenting)). The concurring opinion from Clingman makes the same critical

distinction—the voter *is* affiliated with the party in an open primary:

> registration with a political party surely may signify an important personal commitment, which may be accompanied by faithful voting and even activism beyond the polls. *But for many voters, registration serves principally as a mandatory (and perhaps even ministerial) prerequisite to participation in the party's primaries. The act of casting a ballot in a given primary may, for both the voter and the party, constitute a form of*

> *association that is at least as important as the act of registering.  The act of voting in the Democratic primary fairly can be described as an act of affiliation with the Democratic Party.  The fact that voting is episodic does not, in my judgment, undermine its associational significance; it simply reflects the special character of the electoral process, which allows citizens to join together at regular intervals to shape government through the choice of public officials.*

Clingman v. Beaver, 544 U.S. 581, 600-01 (2005) (O'Connor, J., concurring) (emphasis added; citation, internal quotation marks and brackets omitted) (quoting same language from La Follette).  The defining attribute of an open primary is that the voter participates in one—*and only one*—party primary.  Jones and Clingman show that this critical distinction is clearly one of constitutional significance.[5]

This is why the Party's reliance on Jones is misplaced.  Its arguments assume that the blanket primary struck down in Jones and the open primary at issue here are identical in all constitutionally-relevant respects.  But this logic is fundamentally flawed: ***voters do affiliate with one party and one party only*** in an open primary, and Jones itself noted this distinction.  Haw. Const. Art. II § 4; HRS

---

[5] La Follette did not hold differently.  In the Court's view, the constitutionality of an open primary was *not* the question posed in that case.  The question was "whether, once Wisconsin has opened its Democratic Presidential preference primary to voters who do not publicly declare their party affiliation, it may then bind the National Party to honor the binding primary results, even though those results were reached in a manner contrary to National Party rules." La Follette, 450 U.S. at 120.  The Court's opinion *supports* the constitutionality of the open primary: "Concluding that the open primary serves compelling state interest by encouraging voter participation, the court held the state open primary constitutionally valid. ***Upon this issue, the Wisconsin Supreme Court may well be correct.*** In any event there is no need to question its conclusion here." Id. at 102-21 (emphasis added).

Civil No. CV 13-00301 JMS/KSC

§ 12-31; Jones, 530 U.S. at 577 n.8.  In an open primary, the voter's act of choosing a party ballot simultaneously relinquishes the right to vote in any other party's primary for any office.  Choosing which party primary to participate in is therefore an act of affiliation that a blanket primary lacks.  In a blanket primary, voters move freely about the ballot, and may vote for nominees of any race from any party.  No relinquishment occurs, and no affiliation with any political party can have formed with any voter in a blanket primary.  Jones, 530 U.S. at 581 (describing blanket primary voters as "wholly unaffiliated with the party.").

In an open primary, voters choose a party as their own the day of the primary.  This affiliation is at the most important time, just before they cast their vote.  ***Choosing a political party as your own for purposes of casting a vote is, for many voters, the only time that matters***.  See Clingman, 544 U.S. at 600-01 (O'Connor, J., concurring) ("for many voters, registration serves principally as a mandatory (and perhaps even ministerial) prerequisite to participation in the party's primaries. The act of casting a ballot in a given primary may, for both the voter and the party, constitute a form of association that is at least as important as the act of registering."); La Follette 450 U.S. at 130 n.2 (Powell, J., dissenting) ("Limiting voters to only one party's ballot discourages voters from voting on a ballot of a party other than their own, because in order to do so they would have to sacrifice the opportunity to participate in their own party's selection process.").

15

This form of association is exactly the distinction adopted in <u>Jones</u>.  530 U.S. at 577 n.8.

The primary is an *election*.  Polling places are protected to ensure the sanctity of the vote.  <u>See, e.g.</u>, <u>Burson v. Freeman</u>, 504 U.S. 191 (1992) (upholding ban on campaigning within 100 feet of a polling place).  The ballot is not a forum for political expression.  <u>See, e.g.</u>, <u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as forums for political expression.").  In other words, a primary election is ***all about the votes***.  This highlights the significance of the affiliation that takes place on election day in an open primary.  A voter chooses which party primary to participate in, that is, the voter *affiliates with* that party during the moments when it matters most: when casting her or his vote.  The voter is limited to *one* party.  Hawaii law makes this limitation explicit: "A voter shall be entitled to vote only for candidates of one party or only for nonpartisan candidates.  If the primary or special primary ballot is marked contrary to this paragraph, the ballot shall not be counted."  HRS § 12-31.  It is this form of ***exclusive affiliation*** that the blanket primary in <u>Jones</u> lacks.

Because the voters who select and vote in the Democratic primary ***are*** affiliated with the Party, the Party's claim that the open primary "severely" burdens its associational rights fall flat.  It is a *fact* that voters in the Democratic party affiliate with the Party, because it is required by law that they do so in order

16

for their vote to be counted.  HRS § 12-31; Nago Decl.; Ex. A.  No one can have *actually voted* in more than one party's primary; the law makes this an impossibility.  Id.  The voter's act of affiliation is not an empty one.  An open-primary voter must forgo voting in other parties' primaries—no matter what other races might be offered there.  Id.

Hawaii's very recent history demonstrates that *voting itself is an act of affiliation* that ties a primary voter to the Party.  Hawaii's primary election is open, but the choice of presidential electors is not.  Presidential electors are chosen by convention, which are limited to the members of each party.  HRS § 14-21 (parties to hold conventions pursuant to its own rules); Doc. 13-1.  These conventions are exempt from HRS chapter 12, which governs the primary.  HRS § 12-1.

Around 2005, the Democratic Party of Hawaii had around 20,000 registered members.  Doc. 13-1 at 3.  This level of membership was consistent—in approximate ranges—for some time before that.  Id.  In 2008, the Party's membership skyrocketed.  The membership *tripled* in a single year, to around 65,000 members.  Id. at 3.  The well-known events of 2008 caused this dramatic change: Hillary Clinton and Barack Obama were competing for the Democratic nomination for the presidency.

Since only registered Party members could cast their vote in that contest, the Party's membership jumped in a very striking manner.  The most ready conclusion

17

one can draw from this data is that it is *the access to the vote that matters* for purposes of affiliation with the Party.  For these 45,000 voters, registering for the Party was simply the step that stood between the voter and the ballot.  See Clingman, 544 U.S. at 600-01 (O'Connor, J., concurring) ("for many voters, *registration serves principally as a mandatory (and perhaps even ministerial) prerequisite to participation in the party's primaries.* The act of casting a ballot in a given primary may, for both the voter and the party, constitute a form of association that is at least as important as the act of registering.") (emphasis added).

This recent data shows that approximately two-thirds of the Party's current membership joined in 2008, apparently in direct response to the Clinton-Obama race.  Doc. 13-1 at 3.  To some extent, therefore, the Party's arguments now are inconsistent with its very recent history.  Only five years ago, approximately 45,000 of the Party's current members were not registered with the Party.  These individuals apparently registered with the Party because it was a "prerequisite" to casting their vote in a particularly high-profile race.  Clingman, 544 U.S. at 600-01 (O'Connor, J., concurring).  The Party's arguments now suggest that—because they had not registered with the Party earlier—these same 45,000 voters did not sufficiently affiliate the Party *before* 2008, say for purposes of the 2006 primary.  Under the Party's arguments now, these voters could have been "adherents of

opposing parties" or "indifferent to the beliefs" of the Party. Doc. 4-1 at 15. Yet, given the Party's dramatic increase in membership in 2008, isn't it more likely that in 2006, these voters would have identified themselves politically as Democrats, and their choice to formally register with the Party during 2008 confirms this?

The very recent facts therefore show that choosing the Democratic Party as your own on the day of the primary shows exactly the kind of affiliation the Supreme Court was contemplating when it distinguished open primaries from blanket primaries in <u>Jones</u>. <u>Jones</u>, 530 U.S. at 577 n.8. After all, the primary is an election. Choosing the party for purposes of the primary is the day that affiliation matters most: when the vote is at stake.

The Party's argument that the voters who participate in the open Democratic primary are "unaffiliated" with the Party therefore falls flat. Open primary voters *are* affiliated with the Party, under the logic of <u>Jones</u> and the <u>Clingman</u> concurrence. And the facts show that for at least two-thirds of the Party's current membership, registering with the Party was simply a way of getting access to the ballot, an act of affiliation which is not necessarily any greater than the affiliation that takes place when choosing the party's primary during the open primary. <u>See</u> <u>Clingman</u>, 544 U.S. at 601 (O'Connor, J., concurring) ("The act of casting a ballot in a given primary may, for both the voter and the party, constitute a form of association that is *at least as important* as the act of registering.") (emphasis

added). Access to the ballot itself was the apparent motivator for a substantial

majority of the Party's current membership. This facts supports the conclusion that

it is the *vote*—the affiliation in the voting booth—that matters most.

Given this conclusion, the Party's argument regarding their preferred style of

affiliation for primary voters becomes a complaint not about the *existence* of

affiliation, but about the *method* of affiliation. Voters *are* affiliated with a political

party when they choose to participate in the party's primary. Jones, 530 U.S. at

577 n.8 ("The act of voting in the Democratic primary fairly can be described as an

act of affiliation with the Democratic party[.]") (brackets, citation, and internal

quotation marks omitted). But the Party wants these voters to affiliate with the

Party in a *different way*. This is insufficient to show that the burden on the Party's

associational rights is "severe."[6]

By itself, the Party's preference on *how* affiliation with the Party is

established is not enough to demonstrate a severe burden on associational rights.

See Clingman, 544 U.S. at 590 (discussing ease of affiliation with the party)

(plurality op.). As explained above, the Party argues and assumes that the burden

on its associational rights is severe, but it does not *prove* this conclusion with *facts*.

---

[6] Importantly, the Fourth Circuit did not address this issue in Miller v. Brown, 503
F.3d 360 (4th Cir. 2007). In fact, the court *explicitly* did not decide the issue of
voter affiliation through the open primary process. Id. at 366 n.6. Miller all but
ignored the distinction made in Jones. Id.

Under the distinction made in Jones, open primary voters *are* affiliated with the

Party by voting in only one party's primary.  Jones, 530 U.S. at 577 n.8.

The Party therefore cannot show that the burden on its associational rights is

severe.  The Party's motions should be denied, and Defendant's counter-motion

should be granted.

**D.      The State's Interests in the Open Primary**
**Outweigh the Party's Associational Rights**

Under Supreme Court precedent, if the Party's associational rights are only

subject to a "lesser" burden, "a State's important regulatory interests will usually

be enough to justify, reasonable nondiscriminatory restrictions."  Timmons, 520

U.S. at 358 (internal quotation marks and citations omitted).  Because the burden

on the Party's associational rights is not severe, this test applies here.  As explained

below, however, *even if* strict scrutiny applies, the governmental interests are

compelling and can meet that test.[7]  The open primary is constitutional under either

standard.

---

[7] "[B]ecause a government has such a compelling interest in securing the right to
vote freely and effectively, this Court never has held a State to the burden of
demonstrating empirically the objective effects on political stability that are
produced by the voting regulation in question."  Burson v. Freeman, 504 U.S. 191,
208 (1992) (citation, internal quotation marks and brackets omitted).

*1.     The Open Primary Enhances the Democratic Process
By Removing Barriers to Voter Participation*

The open primary encourages voter participation by removing barriers to

voter participation.  As explained above, registering for a political party is, for

many voters, just a step between them and the ballot.  <u>Clingman</u>, 544 U.S. at 600-

01.  The more steps inserted between the voter and the ballot, the harder it becomes

for people to vote.  Opening the primary counters this factor by making it easier for

people to vote, and thereby removing barriers to voter participation.  <u>See</u> Comm. of

the Whole Report No. 16, in 2 *Proceedings of the 1978 Constitutional Convention*,

at 1025 (1980).

Keeping democracy in the hands of more of the people is certainly a

compelling interest.  A State may require the parties to choose their candidates by

primary *election*, as opposed to a choice made by party bosses:

> the direct primary [is] a vital weapon . . . to make government accessible to
> the superior disinterestedness and honesty of the average citizen. Then, with
> the power of the bosses broken or crippled, it would be possible to check the
> incursions of the interests upon the welfare of the people and realize a
> cleaner, more efficient government. ***We can imagine no government
> interest more compelling.***

<u>Lightfoot v. Eu</u>, 964 F.2d 865, 872 (9th Cir. 1992) (emphasis added; citation and

internal quotation marks omitted).  "We therefore hold that ***the State's interest in***

***enhancing the democratic character of the election process overrides whatever***

22

*interest the Party has in designing its own rules for nominating candidates.*" Id.
at 873 (emphasis added).

"Enhancing the democratic character of the election process" is exactly what
the open primary does here. There is no interest more important: democracy itself.

2.   *The Privacy Afforded by the Open Primary Preserves the Integrity of
the Democratic Process By Protecting Voters from Coercion*

The State of Hawaii has a compelling interest in maintaining voters' privacy.
The right to privacy is expressly protected in the Hawaii constitution, for voting
purposes and in general.  Haw. Const. Art. I § 6, Art. II § 4.  The history behind the
constitutional provision at issue here shows that privacy was sought not just for
itself, but because privacy supports *other* compelling interests.  Keeping party
affiliation private protects voters from coercion.  This interest supports the
constitutionality of the open primary.

The history of the 1978 constitutional convention (which amended Haw.
Const. Art. II § 4 into its current form) shows that keeping party affiliation private
was needed to protect voters and encourage their participation.  Several delegates
expounded on the importance of private affiliation:

- "a large percentage of the electorate in Hawaii continues to stay away from the
  polls because of discontent over the closed primary system.  Many people feel
  this is an invasion of their privacy, that it is repugnant to our democratic

23

process . . . ." 2 *Proceedings of the Constitutional Convention of Hawai'i of 1978*, at 744 (1980) (Delegate Campbell).

- "An open primary election operates to protect a person's voting and privacy rights . . . [a]s the system operates now [then-closed primary], a voter must declare to a total stranger his party preference at the time of registration and at the primary voting." Id. at 766-67 (Delegate Odanaka).

- "[I]n earlier days in this State, . . . if you lived in a small town, especially a sugar mill town, and were a supervisor, and you went in and asked for the wrong ballot or you were a rank-and-file member and you went in and asked for the wrong ballot – that would be a stigma attached to you in your daily lives." Id. at 768 (Delegate Blean).

These concerns are not foreign to American elections. History shows how easily the voting process can be subject to coercion. See, e.g., Burson, 504 U.S. at 200-06 (detailing history showing why secret ballots are necessary) (plurality op.). Mandating that party affiliation be public may have that effect, by subjecting voters to pressure to register with the "right" party or participate in the "right" primary. The State need not stand idly by: "*A State indisputably has a compelling interest in preserving the integrity of its election process.*" Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 231 (1989) (emphasis added). A State also "has a compelling interest in protecting voters from confusion and undue

24

influence." Burson, 504 U.S. at 199 (plurality op.); id. at 214 ("under the statute the State acts to protect the integrity of the polling place where citizens exercise the right to vote.") (Kennedy, J., concurring).   The open primary system removes these potentially coercive influences by allowing voters to affiliate with *one* party in the privacy of the voting booth.   A closed primary, by contrast, would require election officials (and presumably others, like the Party itself) to know each voter's party choice.

The State's interests in encouraging voter participation and protecting the integrity of the election by maintaining voter privacy are both compelling under the cases explained above.   Opening the primary was intended to do just that, by protecting voters from pressure, embarrassment, or outright intimidation.   These interests were specifically considered in support of the open primary.   The open primary protects voters' privacy not just for its own sake, but because privacy supports other compelling interests.[8]   The open primary is constitutional.

3.   *The Open Primary Supports a Vibrant Multi-Party System*

The State of Hawaii also has a strong interest in preserving the stability of its political system through maintaining a strong multi-party system.   "Maintaining a

---

[8] Jones discusses the privacy of voters' party affiliation *without* addressing how either of these specific interests (encouraging voter participation, protecting against coercion) tie into privacy.   Jones, 530 U.S. at 584-85.   This is important, because Jones determined that protecting voters' privacy was not compelling only *"in the circumstances of this case,"* not as a general proposition.   Id. at 584.

Civil No. CV 13-00301 JMS/KSC

stable political system is, unquestionably, a compelling state interest." Eu, 489

U.S. at 226 (citation omitted).  A strong multi-party system is good for democracy:

it encourages the open exchange of ideas and subjects public policy debates to

competing viewpoints.  Because a vibrant multi-party system is crucial for a vital,

functioning democracy, Hawaii has a compelling interest in preserving this system.

See Timmons, 520 U.S. at 367 ("The Constitution permits the Minnesota

Legislature to decide that political stability is best served through a healthy two-

party system.  The stabilizing effects of such a two-party system are obvious.

There can be little doubt that the emergence of a strong and stable two-party

system in this country has contributed enormously to sound and effective

government.  Broad-based political parties supply an essential coherence and

flexibility to the American political scene.") (internal quotation marks and citations

omitted); Clingman, 544 U.S. at 593-94  ("preserv[ing] political parties as viable

and identifiable interest groups" is an important regulatory interest.") (brackets,

quotation marks, and citation omitted).

Hawaii's electorate votes heavily Democratic.  Nago Decl.  Closing the

Democratic primary—as the Party requests here—could all but eliminate

competition from the other parties.  This would happen because of the "safe

district" phenomenon: in many prominent races, the Democratic primary is where

the real contest is.  The winner of this primary will, in all likelihood, win the

26

general election.  If voters must formally register with the Democratic Party in order to vote *in the election that will decide their representation*, the continued viability of the other parties may be threatened.[9]  This is bad for democracy because public policy debates are best conducted when competing viewpoints are tested against each other.  Competing political parties benefit democracy in the same way that the adversarial process benefits this Court.  Competing points of view are tested and judged, and the decision-maker is better equipped when both (or multiple) sides of a debate participate, not just one.

The State's interest in the open primary is meant "to prevent the disruption of the political parties from without" by supporting a multi-party system.  Tashjian, 479 U.S. at 224.  A vibrant multi-party system is necessary to foster public debate and to preserve the stability of our political branches.  This interest serves to uphold the open primary.

The State has three distinct interests supporting the open primary.  As explained above, the Party has not demonstrated that the burden on its associational rights is severe.  Consequently strict scrutiny does not apply.  *Even if*

---

[9] Note that this argument does *not* depend on the functional disenfranchisement of individual "safe district" minority-party voters, as was rejected in Jones.  Jones, 530 U.S. at 583-84.  This argument instead turns on the larger societal need for a vibrant multi-party system, and whether closing the dominant party's primary will undermine that critical interest.

27

this Court does apply strict scrutiny, these interests can meet that test.[10]  Hawaii's

open primary is constitutional.

### E.   The Party Cannot Meet the Other Three Prongs for Preliminary or Permanent Injunctive Relief

"A plaintiff seeking a preliminary injunction must establish that he is likely

to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest."  Winter, 555 U.S. at 20.  The same prongs,

with actual success, govern permanent injunctions as well.  Id. at 32.

The Party's lack of likely success on the merits is explained above.  The

Party also cannot meet the other three prongs.  The Party cannot show irreparable

harm because voters in the open primary *do* affiliate with the Party exclusively,

and the Party's associational rights are not severely burdened.  Because it can show

no likelihood of success on the merits, the Party has also "failed to establish that

---

[10] Defendant does not make any arguments regarding the Party's ability to spend money in favor of its candidates.  In the interests of completeness, however, Defendant addresses this issue because several of the Party's statements are inaccurate.  Doc. 4-1 at 28.  First, HRS § 11-204 was repealed in 2010.  2010 Haw. Sess. L. Act 211.  Second, the Party's expenditures on behalf of candidates will be counted as contributions only if the expenditures are *coordinated*.  HRS § 11-363.  Third, to the extent that the Party claims it must be allowed to spend its money because others are spending more on the election, this argument has been rejected by the United States Supreme Court.  Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 363-64 (2010) (overruling Austin v. Michigan Chamber of Commerce, 494 U.S. 652 (1990) and rejecting the "anti-distortion" rationale.)

Civil No. CV 13-00301 JMS/KSC

irreparable harm will flow from" the denial of injunctive relief.  Hale v. Dep't of Energy, 806 F.2d 910, 918 (9th Cir. 1986).

The balance of equities does not tip in the Party's favor either.  The Party asks this Court to upend a central component of Hawaii's election laws yet provides *no facts whatsoever* to support its claim.  Instead the Party relies on assumptions and suppositions; these are insufficient to conclude that the equities tip in its favor.  Striking down the open primary would make it more difficult for people to vote, which is decidedly *not* in the public interest.  Nor is weakening the multi-party system, or undermining democracy by failing to protect voters from intimidation or coercion in the public interest.  The Court should also consider the confusion that would result from such a ruling, which could result in the Democratic primary being closed, but the other primaries remaining open.  This is a democracy, and it is not in the public interest to create any confusion about voting or access to the polls.  See Lightfoot, 964 F.2d at 871 ("the State has a compelling interest in minimizing voter confusion.")

The Party cannot meet any of the prongs of injunctive relief.  The motions should be denied.

**F.    Even if This Court Strikes Down the Open Primary, Restructuring the Election Laws is the Sole Prerogative of the Hawaii State Legislature**

The Party moves for *partial* summary judgment, seeking subsequent proceedings in which Defendant would "devise, and submit to the Court and

Plaintiff, regulations and procedures that will permit the [Party] to participate in future Hawaii elections." Doc. 4 at 5. *Even if* this Court strikes down the open primary, this remedy is completely inappropriate. If this Court rules that the open primary is unconstitutional, the Court's role in this case would necessarily end. The decision of what to do next—what law to enact in the open primary's place—must fall to the Hawaii State Legislature. Haw. Const. Art. II § 4 ("The legislature shall provide for the registration of voters and for absentee voting and shall prescribe the methods of voting at all elections."); Art. II § 8 ("Special and primary elections may be held as provided by law[.]").

The Party seriously misconstrues the law governing the open primary. The open primary is not governed by "regulations and procedures." Doc. 4 at 4. The open primary is required under the Hawaii constitution and is implemented by Hawaii statute. Haw. Const. Art. II § 4; HRS § 12-31. Other than this Court enjoining the open primary, any change to this system must to be *statutory*.[11] It is not within the Defendant Nago's power to direct the Hawaii State Legislature on what statute to enact should this situation arise. Nor would it be proper for this

---

[11] Defendant assumes that *if* this Court strikes down the open primary, the Court would enjoin the relevant portions of *both* Haw. Const. Art. II § 4 and HRS § 12-31. If the Court struck down *just* HRS § 12-31, the Legislature would remain subject to the constitutional provision. This would severely hamper any attempt to enact a new statute governing the *primary* election in response to the Court's ruling, because any amendment to the State Constitution could not be made until the next *general* election. Haw. Const. Art. XVII § 3.

Court to short-circuit the political processes inherent in a State government's choosing one primary system over another. This is a matter of judicial restraint and respect for the State authority that exists in our federal system.

*If* this Court strikes down the open primary, the Hawaii State Legislature will decide between several constitutional alternatives.[12] The Democratic Party's request that it play a determinative role in this process—using the remedy it seeks from this Court—is completely misplaced. *If* the open primary is struck down, the decision of what form of primary should be used instead is ***not the Party's to make***.[13] See e.g., Jones, 530 U.S. at 572 ("States have a major role to play in structuring and monitoring the election process, including primaries. We have considered it "too plain for argument," for example, that a State may require

---

[12] For example, the State might enact a "top two" nonpartisan primary. Chamness v. Bowen, 722 F.3d 1110 (9th Cir. 2013); Wash. State Republican Party v. Wash. State Grange, 676 F.3d 784, 787 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 110 (2012). See also Jones, 530 U.S. at 585 (describing nonpartisan primary). Or the State might enact a "party choice" primary, where each party chooses for itself whether to allow independents or the members of other parties, or both. Or the State might enact a semi-closed primary, with all parties being prohibited from accepting voters registered with other parties. Clingman. Or the State might replace the partisan primary with party-funded conventions or caucuses, since primary elections are optional under state law. Haw. Const. Art. II § 8. Or the State might consider other alternatives altogether. (This list is not intended to be exhaustive, nor to indicate any commitment to any of these options.)

[13] Naturally, the Democratic Party could participate in the public debate about what primary system the State of Hawaii should adopt *if* this Court rules that the open primary is unconstitutional. The same would be true for any other political party, interest group, individual voters, or other stakeholders. But the Party is not entitled to use this litigation to increase its role beyond that.

Civil No. CV 13-00301 JMS/KSC

parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion.") (citations omitted).  See also Lightfoot, 964 F.2d at 873 ("the State's interest in enhancing the democratic character of the election process overrides whatever interest the Party has in designing its own rules for nominating candidates.")

Furthermore, the decision of how to restructure the statutes governing the primary—should that prove necessary—is not a particularly easy one.  For example, the session law enacted that implemented the open primary amended nine separate sections of existing statutory law.  1979 Haw. Sess. L. Act 139; Ex. D.  Legislation to replace the open primary would probably require at least that many specific statutory amendments.  Only the State Legislature can take on that task.

The problems inherent in the Party's invitation for this Court to rewrite Hawaii's election laws are compounded by the Party's focus on "public affiliation" through the voter registration process.  Doc. 4-1 at 4; Doc. 5 at 3.  Hawaii's voter registration laws have no requirement for voters to state their party choice.  HRS § 11-15.  The Party apparently prefers that only registered members and publicly affiliated voters be allowed to participate in the primary.  Doc. 4-1 at 14.  This would require that the voter registration laws—*which are not even the subject of this suit*—also be amended.

32

To the extent the Party's suggested remedy includes changes to the voter registration laws, this also raises a concern about the lack of necessary and indispensable parties. Fed. R. Civ. P. 19. Defendant Nago is not responsible for the voter registration laws. Nago Decl. By law, the counties operate the voter registration system and absentee voting. HRS § 11-11. This is authority directly assigned to the counties by statute, *not* authority delegated by Defendant Nago. Id.; Nago Decl. None of the counties are named parties to this suit. If this Court entertained the Party's suggestion to rewrite the voter registration laws, the Court would have to do so without the presence of the government agencies that implement those laws. This is another independent reason why this Court should not accept the Party's invitation to rewrite the State's election laws.

Finally, it would be decidedly inappropriate for this Court to attempt to refashion Hawaii's election laws itself without *at least* giving the State Legislature an opportunity to do so. Reynolds v. Sims, 377 U.S. 533, 586 (1964) ("*judicial relief becomes appropriate only when a legislature fails* to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.") (emphasis added).[14] See also Wise v. Lipscomb, 437 U.S.

---

[14] The choice between different styles of primary elections is an inherently legislative matter. The Hawaii State Constitution expressly directs the Legislature to determine how voting is conducted in this State: "The legislature shall provide for the registration of voters and for absentee voting and shall prescribe the method of voting at all elections." Haw. Const. Art. II § 4. Primary elections are also

33

535, 540 (1978) (court must "afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan.").

The Party has not even alleged that the State Legislature would fail to amend the laws governing the primary, should it prove necessary. Yet the Party supposes that it should be given a large hand in rewriting Hawaii's election laws in the first instance. Doc. 4 at 5. This is wrong, for the same reasons that short-circuiting the political processes regarding the laws governing the primary election would also be wrong: the decision is not the Party's to make.

The open primary is constitutional for all the reasons explained above. But *if* this Court rules that the open primary is unconstitutional, the most appropriate remedy would be to enter a permanent injunction enjoining the open primary for the Democratic Party *only*, close the case, and allow the political processes to play out after that. The Party assumes that this litigation will allow it to circumvent the Hawaii State Legislature's authority over the laws governing the State's elections. This conclusion is wholly misplaced and should be categorically rejected.

## CONCLUSION

The Party's contention that its associational rights have been severely burdened is based on assumptions, not *facts*. The facial challenge fails because the

---

expressly subject to the Legislature's authority: "Special and primary elections may be held *as provided by law*[.]" Haw. Const. Art. II § 8 (emphasis added).

open primary plainly has some constitutional applications. The as-applied challenge fails on the nonexistent factual record. And the Party has failed to show that the burden on its associational rights is severe, because voters in an open primary *do* affiliate with the party. Both of the Party's motions must therefore be denied, and the Defendant's counter-motion for summary judgment should be granted. Finally, *even if* this Court were to rule that the open primary is unconstitutional, refashioning the primary as a result of that ruling would be the sole prerogative of the Hawaii State Legislature.

DATED:   Honolulu, Hawaii, September 16, 2013.

Respectfully submitted,

s/ Deirdre Marie-Iha
Deirdre Marie-Iha
Marissa H.I. Luning

*Deputy Attorneys General*
**Attorneys for Defendant Scott Nago,
Chief Election Officer**

Civil No. CV 13-00301 JMS/KSC