GILL, ZUKERAN & SGAN
T. ANTHONY GILL 2391-0
WADE C. ZUKERAN 4319-0
DAVID A. SGAN 6643-0
LINDA M. ARAGON 8069-0
Ocean View Center
707 Richards Street, Suite 100
Honolulu, Hawai`i 96813
Telephone: (808) 523-6777
Facsimile: (808) 523-7003
E-mail: gzsdocs@gzsattorneys.com

Attorneys for Plaintiff
Democratic Party of Hawai`i

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DEMOCRATIC PARTY OF HAWAI`I,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT T. NAGO, in his official capacity as Chief Election Officer of the State of Hawai`i,<br><br>Defendant. | CIVIL NO. 13-00301 JMS KSC<br><br>PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION, AND OPPOSITION TO DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT<br><br>**Hearing:**<br>Date: October 7, 2013<br>Time: 9:00 AM<br>Judge: J. Michael Seabright |

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION, AND OPPOSITION TO DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGEMENT

Plaintiff Democratic Party of Hawai`i ("DPH") submits this consolidated reply and opposition, pursuant to LR 7.9.

**A. Severe burden.** Hawai`i's "open"partisan primary system severely burdens a political party's associational rights by compelling political association, as DPH shows in its opening brief. To survive scrutiny, the primary must achieve compelling state interests, by narrowly tailored means. *See*, Clingman v. Beaver, 544 U.S. 581, 586-87 (2005).

**B. State interests not compelling.**

The asserted state interests are insufficiently compelling to justify the severe burden the "open" primary places on the core associational freedoms of DPH and its members.

"*Removing barriers to voter participation*". Defendant's Opposition Memorandum ("**D.**") at 22. Since registration to vote in a party is not a constitutionally significant barrier to voter participation, Clingman, 591-92, removing this non-barrier is of no material significance, and cannot be a

compelling interest. Also, cases showing that a state may establish a primary if it chooses (in lieu of letting "bosses" decide matters), **D**. 22, fall far short of demonstrating that an "open" primary is constitutional.

"*Privacy afforded by the Open Primary*". **D**. 23. To be precise, the "open" primary grants every voter a privilege to participate in DPH's nomination anonymously. This has dual flaws: mandated all-inclusiveness, and mandated anonymity. Under California Democratic Party v. Jones, 530 U.S. 567 (2000), a political party, in exercise of its right of free association, can define its nomination electorate as less than all voters. But if every voter can participate, that right to exclude is negated. *Compare*, Jones, 573 (prior cases "do not stand for the proposition that party affairs are public affairs".) Furthermore, it is terribly hard, if not impossible, to form a meaningful political association with an anonymous other, if for no other reason than anonymity is exactly intended to avoid association; otherwise, the person would join. Jones, at 585, holds that a purported right of privacy of party affiliation cannot overcome associational rights. Privacy of party affiliation is not a compelling state interest as a matter of

law.

"*Supporting a vibrant multi-party system*", at **D**. 25 - 27, is a confusing formulation because "vibrant" is a vague word, and because Defendant's argument conflates the distinct interests of a multi-party system and a two-party system, which Defendant treats interchangeably. We think Defendant is for "having more than one political party that is a viable and identifiable interest group." **D**. at 26.

Defendant notes that Hawai`i is currently a heavily Democratic state; no surprise there. Defendant then asserts that there are "safe districts" in which Democrats are so highly likely to be elected, that the Democratic primary, for all practical purposes, selects the representative. (The existence of "safe districts" is the assertion of counsel alone, since Defendant Nago's Declaration makes no such claim.) Defendant then says that if citizens in safe districts must register with the DPH to vote *in the election that will decide their representation* (emphasis in original at **D**. 27), the viability of the other parties may be threatened. This conclusion should be inspected closely.

Defendant starts with the assumption that the district is so overwhelmingly Democratic, that no other party stands a chance. There are just so many Democratic voters there, that candidates of other parties might as well give up and hitch a ride out of town. In such a district, Defendant says, if the voters, who are already overwhelmingly aligned with DPH, must register with the DPH in order to vote with the DPH, the viability of the Republican, Green, Libertarian, and other parties "may be threatened." **D.** 27. This argument is nonsense on so many levels: it presumes the conclusion (other parties crushed) and then delights in proving what it assumed (other parties crushed); it adduces a cause (registration) which operates after the effect (initial hopelessness of election of non-DPH candidates); "safe districts" are hypothetical, not proved on the record; and nothing makes the speculative injury to other parties more likely than speculative advantage to them, because if DPH is allowed to define its nomination electorate, lazy Democrat-leaning persons, who don't want to be bothered with associating properly, might simply support other parties.

Frankly, Defendant's goal is troubling. Using the power of the state to equalize political outcomes, in a district where most citizens think one way, is a dangerous idea. Excusing political fecklessness by penalizing political competence, is a dangerous idea. Also, if the purported state interest is to preserve parties as interest groups that are "viable and identifiable" and able to engage in robust debate, how can any party take a non-conventional view, if all voters can select its candidates?

Defendant claims, **D**. 27 n. 9, that somehow this alleged compelling interest was not ruled on by Jones. But it was. Jones at 583-84. If minority-party members, seeing the hopelessness of voting for their own party, feel torn between abandoning their own party and sticking to their principles, that is their decision to make, but that's merely the consequence of majority rule. Defendant tries to avoid Jones by proposing a distinction without a difference.

C. **Law not "narrowly tailored"**. Defendant does not even try to show that the purported compelling interests are achieved by narrowly-tailored means; in other words, that no more burden is placed on

associational rights than necessary. For example, there is no discussion of other solutions for the "safe districts" problem, such as avoidance of gerrymandering, or multi-member districts. There is nothing "narrowly tailored" about the "open" primary, a blunt instrument that wreaks broad constitutional damage by negating freedom of association.

D. **United States v. Salerno and standards of "facial review".**

Defendant urges the Court to follow the "no set of circumstances exist" test in U.S. v. Salerno, 481 U.S. 739 (1987), as the standard for facial challenges to Hawai`i's primary election law. **D** at 7. The Salerno test is a controversial, often-questioned judicial standard, that has been criticized, ignored, and applied inconsistently by the Ninth Circuit and the Supreme Court.[1]

1 See Sprint Telephony PCS, L.P. v. County of San Diego, 543 F.3d 571 (9th Cir., 2008) ("[t]he Supreme Court and this court have called into question the continuing validity of the Salerno rule in the context of First Amendment challenges), citing Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 128 S.Ct. 1184, 1190, 170 L.Ed.2d 151 (2008); Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971–72 (9th Cir. 2003). See also, Isaacson v. Horne, 716 F.3d 1213 (9th Cir. 2013); U.S. v. Alvarez, 617 F.3d 1198 (9th Cir. 2010); Sierra Club v. Bosworth, 510 F.3d 1016 (9th Cir. 2007), citing City of Chicago v. Morales, 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the Salerno formulation, which has never been the decisive factor in any decision of this Court."); Washington v. Glucksberg, 521 U.S. 702, 740, 117

Standards for facial analysis are intended to reinforce a careful review of constitutional claims. The courts should ensure that there are no troublesome facts hidden beneath the surface, so that the the claim really can be decided on the record. Also, the court should make certain that the law does not admit alternate readings or interpretations, so that there truly is but one avenue for its application. This can be done without Salerno.

Even if the rigid Salerno test is applied to the facts and circumstances of this First Amendment case, the Court should find that Defendant cannot compel DPH to associate with persons it rejects, without violating and severely burdening DPH's free association rights. Either a political party can be forced to associate, or it cannot. The forced association requirement is such an essential aspect of Hawai`i's open partisan primary election procedure, that it cannot be severed from the primary election laws.

---

S.Ct. 2258, 138 L.Ed.2d 772 (1997) (Stevens, J., concurring) ("I do not believe the Court has ever actually applied such a strict standard, even in Salerno itself"); Janklow v. Planned Parenthood, Sioux Falls Clinic, 517 U.S. 1174, 1175, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996) (Stevens, J., concurring in denial of cert.) (stating that Salerno "no set of circumstances" standard "does not accurately characterize the standard for deciding facial challenges," and that this "rigid and unwise dictum has been properly ignored in subsequent cases even outside the abortion context").

After proposing the Salerno test, Defendant then boldly asserts that "the open primary is clearly constitutional as applied to any party that wants to open its primary to all voters." **D**. 7. Defendant then says that since the Libertarian Party of Oklahoma wanted to open its primary, in Clingman, some Hawai`i parties may want to open their primaries, so as to them, Hawai`i law would be constitutional, and consequently, DPH cannot show facial unconstitutionality. The Court must now decide whether Defendant's argument is a triumph of logic, or a mistake about what must be proven.

First, why would DPH's rights depend on what other political parties want? Suppose Hawai`i enacted a law that required all persons to swear, on a Puritan Bible, that "the true and only salvation of one's eternal soul is through the auspices and ministrations of the Church of England". This would probably violate several clauses of the First Amendment. Yet we can confidently predict that some citizens, probably those who voted for it, would enthusiastically embrace that law. And affidavits from them could no doubt be placed on the record. Would we say that the offensive oath

was immune from facial review, because some persons were not offended by it? DPH's First Amendment associational rights should not depend on whether other parties want an open primary.

Second, if facial analysis fails because some political parties might embrace the open primary, what is DPH expected to prove in an as-applied analysis? That all other parties don't embrace the law? If so, see the first question.

Third, why does the constitutionality of the "open" primary, as applied to a particular political party, depend on whether that party agrees with it? Surely, a person who agrees with a proposition, yet sues to strike it down, may fail to establish a case or controversy, or lack standing; but would we really say that laws are necessarily constitutional as applied to people who agree with them? A political party that prefers the "open" primary suffers a lack of liberty by having no other choice. Similarly, a citizen may not want to stand in a public forum and make political speeches, but being prohibited from doing so is still a loss of liberty.

The facts of Washington State Grange v. Washington State Republican

Party, 552 U.S. 442, 28 S.Ct. 1184 (2008), are easily distinguished because the purpose of Washington's primary was not to nominate, but to narrow the entire field of candidates and determine the two most popular candidates for the general election, irrespective of party. In contrast, Hawai`i's primary voters are indeed nominating a political party's standard bearers for the general election.

E. **No unresolved facts.** Defendant asserts that the DPH case depends on an unresolved fact because it speculates about voters' subjective states of mind; e.g., how they might be confused, as in Washington Grange. There, plaintiffs contended that allowing candidates to list their "party preference" on the ballot, could seem to voters like official membership in, or endorsement by, the party. The Supreme Court found this speculative, and wanted proof in the record of any proposition about voters' mass psychology. Also, correct ballot design could avoid public confusion about the meaning of "preference."

Here, voters' subjective perceptions, intentions, or confusions, are beside the point. Hawai`i law mandates all-inclusiveness and mandates

anonymity. It compels DPH to accept a nomination electorate in which all nominators are, now and always, anonymous to DPH, and the voter is in sole and unilateral possession of opt-in rights; there is nothing mutual about the relationship between the nominator and the party.

F. **Law clear and not subject to varied interpretation.** The litigants are almost entirely agreed on the applicable law and its clear consequences. The litigants either specifically or tacitly agree that the "open" primary law is derived from the Hawai`i Constitution, it is mandatory and exclusive, it admits of no options, and it is clear, without ambiguity or room for interpretation. Moreover, Defendant's Declaration points out no regulatory wiggle-room, and no history of varying practice. The only difference between the litigants is that Defendant suggests that Plaintiff ought to have attacked voter registration laws as well; *see, infra*.

With no genuine and triable issues of material fact, no important facts off-record, and no room for interpretation in the law, the case is appropriate for decision by summary judgment.

G. **"Affiliation"? Association must be a two-way street.** Defendant

thinks that a voter who hides his identity from DPH, but slips a ballot into a box, is establishing a significant "affiliation" with DPH. **D**. 19-20. Defendant speaks of "affiliation" as if it were an anonymous voter's unilateral right, ignoring the rights of the other citizen-voters who collectively form the DPH. It is not clear whether Defendant equates "affiliation" to "association", or thinks "affiliation" is a substitute for "association", but in DPH's view, that "affiliation" is a spectral and inadequate thing. DPH asserts that its political associations must be voluntary and mutual, not involuntary and compelled or unilateral. True political association would require, as a bare minimum, that two persons know of each other, in order to voluntarily choose to collaborate with each other. The "open" primary prohibits DPH from either knowing or choosing. The "open" primary strips DPH and its members of discretion about whether to associate with vast numbers of anonymous persons. It is not even possible for DPH to locate these people and engage them in conversation, yet these anonymous people have been granted full rights to select DPH standard bearers and thereby define DPH policy, without any

of the responsibilities of membership. This diminishes DPH's ability to build true political community, based on mutuality and the free choice to associate.

In 2008, the influx of voters to DPH was the opposite of a mere "affiliation" (as in casting an anonymous ballot), **D**. 17; it was an outright joining. Tens of thousands of citizens pressed in to become card-carrying members, to participate in caucuses, in-person, face-to-face, without a shred of anonymity, in mutual discussion, to nominate a Democrat for President. How this exciting event shows that DPH must be compelled to use nominators hiding behind a veil of anonymity for other offices, is a mystery of Defendant's rhetoric that we cannot decipher.

H. **Regarding remedy.** Defendant cautions, **D**. 29, that the Court should not jump into rewriting Hawai`i law, a complex process best left to other branches of government. DPH agrees.

Defendant urges that any injunction be only as to DPH. Here, we are not sure what Defendant means. It is true that only DPH has sued, and there are no intervenors. But we think that all political parties have the

same rights and options, whether they choose to exercise them or sue for them or not. DPH only seeks rights all political parties should have.

I. **Practical considerations**. According to the Declaration of Nago, changes in primary procedures could affect the election preparation timeline, and could create problems of staffing, training, and publicity. This may be true, but no litigant can meaningfully address problems of implementation until the Court decides the central issues.

J. **No missing parties**. Because the legislature could resolve constitutional issues without affecting voter registration procedures, as by granting a caucus/convention option similar to the Presidential procedure, county clerks are not necessary parties.

Dated: Honolulu, Hawai`i, September 23, 2013.

GILL, ZUKERAN & SGAN

/s/ T. Anthony Gill

Attorneys for Plaintiff
Democratic Party of Hawai`i